UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LINDA MIANO,

        Plaintiff,

  -against-

JOANNE BRANHART, COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM & ORDER**

Civil Action No.05-5904 (DRH)

**APPEARANCES**:

**For the Plaintiff**:
**Jeffrey Delott, Esq**.
366 North Broadway
Suite 410 K-3
Jericho, NY 11753

**For the Defendant**:
**Roslynn R. Mauskopf**
United States Attorney
Eastern District of New York
One Pierrepont Plaza, 14th Fl.
Brooklyn, NY 11201
By: Som Ramrup, Special Assistant U.S. Attorney

**HURLEY, Senior District Judge**:

      Plaintiff, Linda Miano, ("Plaintiff") brings this action pursuant to 42 U.S.C. 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the "Commissioner" or "Defendant") which denied her claim for disability benefits. Presently before the Court are Plaintiff's and Defendant's motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's

motion is denied and the Plaintiff's motion is granted to the extent this case is remanded for further administrative proceedings.

## BACKGROUND

### I. Procedural Background

Plaintiff applied for disability benefits on May 9, 2003. Her application averred that injuries to her neck and back from slipping on a ladder rendered her disabled as of February 19, 1997. (Tr. 57, 65, 71.)[1] After the application was denied initially (*id.* 39-42), Plaintiff requested a hearing. (*Id*. 43.) On October 13, 2003, a hearing was held before Administrative Law Judge ("ALJ") Joseph Halpern. (*Id*. 13.) Plaintiff was represented by counsel. ALJ Halpern issued a decision finding that Plaintiff was not disabled and had the residual functional capacity to do her past light work. (*Id*. 10-16).

Thereafter, Plaintiff requested the Appeals Council review the decision. By notice dated November 9, 2005, the Appeals Council denied Plaintiff's request for review. (*Id*. at 3.) By letter dated December 12, 2005, Plaintiff's new attorney made a motion to the Appeals Council to reopen its decision. When the Appeals council did not rule on Plaintiff's motion to reopen within sixty days, Plaintiff filed this action. (*See* Affirmation of Jeffrey Delott at ¶¶ 10-12 & Ex. 2.)

### II. Factual Background

### A. Non-medical Evidence

Plaintiff was born March 17, 1953 and was 51 years old at the time of the hearing. (Tr. 39, 57.) She has a limited education, having completed only the ninth grade. Except for the

---

[1] References to "Tr." are to the Administrative Record filed in this case.

years 1981 to 1986, Plaintiff worked steadily from the time she completed her education until 1997. (*Id*. at 64.) From 1987 to 1997, Plaintiff worked as a deli clerk at a supermarket. (*Id*. 14, 21, 72.) In February 1997, Plaintiff was injured when she slipped on a ladder while working at the supermarket. Plaintiff was treated by an orthopedist, Dr. Fedder, a neurologist, Dr. Holzer, and a chiropractor, Dr. Alexovitz. (*Id.* at 26, 28.) Plaintiff was out of work from the time of the accident until November 1999 when she went to work as a salesperson in a department store. (*Id*. at 27.) She worked for less than five months. In April 2000, she was terminated because she could not perform the work. (*Id.)* Plaintiff earned less than $800 in 1999 and less than $900 in 2000. (*Id.* at 64.) When she stopped working in April 2000, Plaintiff was treated mostly by Dr. Holtzer and Dr. Alexovitz. (*Id.* at 28-29.)

Plaintiff testified that her symptoms have gotten worse since 1997. She gets pain across her lower back and then "it goes down [her] leg into [her] foot." (*Id.* at 29.) She testified that she can sit for only 15 to 20 minutes at a time, walk for 20 to 30 minutes at a time and stand for about 30 minutes. (*Id.* at 30.) She also testified that she has trouble lifting more than 10 or 15 pounds and cannot hold anything above her shoulders. (*Id.* at 30-31.) Plaintiff's date last insured is December 31, 2002. (*Id.* at 14, 38.)

Although Plaintiff's counsel initially informed the ALJ that the onset date was April 2000, he later corrected that statement. (*Id.* at 32.) He informed the ALJ that the injury dates back to February 1997 and that her work period from November 1999 to April 2000 was an unsuccessful work attempt. (*Id.)*

*B. Medical Evidence*

**Dr. Feder: Plaintiff's orthopedic surgeon**

Dr. John Feder first saw Plaintiff on February 26, 1997, one week after her injury at work. (*Id.* at 103.) He diagnosed Miano with marked degenerative changes at the C6-7 level and prescribed anti-inflammatories and pain killers. (*Id.* at 103-04.) He concluded that she was totally disabled. (*Id.* 105.) Dr. Feder next saw Miano on March 19, 1997. (*Id.* 101-02.) He advised her to continue chiropractic care and to have diagnostic testing because his examination revealed cervical radicular symptoms, including a positive Tinel's sign. (*Id.*) He continued to concluded that she was totally disabled.

On August 27, 2003, November 19, 2003, January 21, 2004, March 31, 2004, June 9, 2004 and September 1, 2004 Dr. Feder continued Plaintiff's diagnosis of cervical and lumbar sprain and radiculopathy. (*Id.* at 134-143.)

Dr. Feder completed a "Medical Assessment of Ability to do Work-Related Activities," dated September 29, 2004. (*Id.* at 147) The form, as initially completed and reviewed by the ALJ, indicates Miano had lifting impairments: 20 pounds occasionally, 10 pounds frequently. *Id.* She was limited to sitting 2-3 hours in workday. (*Id.* at 148.) Dr. Feder did not complete the section stating when he treated Miano and if there were any standing/walking limitations. *Id.* In an amended form submitted to the appeals counsel, Dr Feder concluded the following: the earliest date of the same level of impairment is August 27, 2003, Miano is limited to lifting five pounds, she is limited to standing/walking 1-2 hours in a workday and she is limited to sitting 2-3 hours. (*Id.* at 153-54). After Plaintiff's then counsel pointed out that Dr. Feder had in fact been treating Plaintiff since 1997, Dr. Feder changed the onset of his medical assessment to

4

December 12, 2002. (Delott Aff. at Ex. 4).

**B. Dr. Mark Lodespoto: Radiologist**

Miano underwent an MRI of the spine on April 8, 1997 with Dr. Mark Lodespoto. (Tr. At 110-11.) The MRI showed a herniated disc at C5-6 and a bulging disc at C6-7. *Id.* A second MRI on May 27, 1998 revealed the herniated disc had worsened and that Miano had "endplate irregularities, pronounced disc desiccation, and disc bulge at the C6-7 level." (*Id.* at 108-09.)

**C. Dr. Walter Alexovitz: Chiropractor**

Dr. Alexovitz has seen Miano continuously since 1997. *(Id.* at 108-33.) On August 20, 2003, at the request of Defendant, Dr. Alexovitz completed form DDD-3883 describing Miano's conditions. *(Id.* at 112-117.) The report indicates Miano was last seen on August 11, 2003 and first seen on February 19, 1997. (*Id.* at 112.) The doctor's diagnoses of Miano include cervical and lumbar sprain/strain, myofascitis, cervical disc syndrome, and cervical radiculitis. (*Id.*) Miano's symptoms included neck and low back pain and stiffness, pain radiating to the arms and hands, and headaches. *(Id.)* Dr. Alexovitz noted his findings were the result of seven clinical tests. (*Id.* at 113.) He stated that in his medical opinion, Miano "is not able to do work related physical activities." (*Id.* at 115.) His report also included several range of motion limitations. (*Id.* at 116-117.)

**D. Dr. Donald Holzer; Neurologist**

Miano saw Dr. Donald Holzer from 1997 through at least April 2000. (*Id.* at 28.) A 1997 "EMG and Nerve Conduction" test performed by Dr. Holzer revealed "acute denervation affecting the C6-7 nerve roots." (*Id.* at 106.) In his testimony at Miano's Worker's Compensation hearing, which was not before the ALJ, Dr. Holzer testified that Miano could not

5

do sedentary work, lifting, bending, or reaching. (Delott Aff. at Ex. 3). Other than the one EMG and Nerve Condition test, Dr. Holzer's medical records were not part of the transcript of this case.

**E. Dr. Fulco: Internist, defendant's duly authorized medical expert**

Dr. Fulco is defendant's medical expert who reviewed Miano's medical reports and testified at the hearing. (R. at 33-37). He testified that Miano has lifting and carrying limitations, limitations as to overhead reaching and gross manipulations. In addition, she cannot sit continuously for more than 30 minutes, up to a maximum of two hours in a workday, and cannot stand or walk continuously for more than 20-30 minutes at a time up to two hours in a workday. (*Id.* at 35-36.) When asked whether his opinion is that Miano is disabled subsequent to April 2000 within the meaning of the Social Security Act, Dr. Fulco stated that he does not have enough medical evidence to make his own conclusions but he cannot contradict Dr. Fedder's assessments that there are sitting, standing, and walking limitations. (*Id.* at 36.) He states Dr. Fedder's assessments are consistent with Miano being unable to do sedentary work. (*Id.* at 37.)

**F. Al Grazia: State Medical Consultant**

Al Grazia, the State's medical consultant, also examined Miano on September 4, 2003. (R. at 118-23.) Grazia is not a medical doctor. (DeLott Aff. ¶ 26.) His assessment indicated Miano could frequently lift or carry 10 pounds and sit, stand, and walk 6 hours in a workday. (R. at 119.) She could occasionally lift/carry 20 pounds. (*Id.*)

6

## DISCUSSION

**I. *Standard of Review***

*A. Review of the ALJ's Decision*

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court may set aside a determination of the ALJ only if it "based upon legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and citation omitted). "Substantial evidence is 'more than a mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'" *Jasinski v. Barnhart,* 341 F.3d 182, 184 (2d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the case de novo. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted).

*B. Eligibility for Disability Benefits*

To be eligible for disability benefits under the Social Security Act (the "SSA"), a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520. This Circuit has described the procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa*, 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Green-Younger v. Barhart*, 335 F.3d 99, 106 (2d Cir. 2003).

### C. The Treating Physician Rule

Social Security regulations require that an ALJ give "controlling weight" to the medical opinion of an applicant's treating physician so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

8

the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa,* 168 F.3d at 78-79. The "treating physician rule" does not apply, however, when the treating physician's opinion is inconsistent with the other substantial evidence in the record, "such as the opinions of other medical experts." *Halloran,* 362 F.3d at 32; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). When the treating physician's opinion is not given controlling weight, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion." *Halloran,* 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include: (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Social Security Administration that tend to support or contradict the opinion. *Id.* § 404.1527(d)(2)(i-ii) & (d)(3-6); *see also Halloran*, 362 F.3d at 32. Furthermore, when giving the treating physician's opinion less than controlling weight, the ALJ must provide the claimant with good reasons for doing so. 20 C.F.R. § 404.1527(d)(2).

**D. The ALJ's Obligation to Develop the Record**

It is a rule in the Second Circuit that "'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)). As the *Pratt* Court explained: "This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination . . . and exists even when, as here, the claimant is represented by counsel." 94 F.3d at 37 (internal citations omitted).

9

## II.     The ALJ's Decision

Applying the five-step analysis enumerated in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 26, 2000 and had severe impairments which impose limitations.  The ALJ found, however, that Plaintiff did not meet the third step because her "impairments, while severe, neither meet nor equal in severity any impairment listed at Appendix 1 to Subpart P, Part 404 of the Regulations."  (Tr. at 16.) Because the ALJ found that Plaintiff's ailments did not qualify as a per se disability under the listings, the ALJ went on to analyze the fourth factor, i.e., whether Plaintiff "has the residual functional capacity to perform her past relevant or any other work existing in significant numbers in the national economy."  Finding that "as of December 31, 2002" Plaintiff "retains the residual functional capacity to perform light work" as she could "lift and carry twenty pounds occasionally, sit six hours in an eight hour work day and stand and walk six hours in an eight hour day," ALJ concluded that Plaintiff was able to perform "her past relevant light work as a meat and deli counter person or salesperson."  (*Id*. at 15.)  Thus, the ALJ found that Plaintiff was not disabled under the SSA on or before December 31, 2002.

## III.    Plaintiff's Arguments

Plaintiff asserts the following three arguments in support of her contention that the ALJ's decision should be overturned: (1) the ALJ erred at step one of the analysis because the relevant period is between February 1997 and prior to December 31, 2002 as Plaintiff's brief period of employment in 1999/2000 constituted either an unsuccessful work attempt or a trial work period; (2) the ALJ erred at step four of the analysis because his finding that Plaintiff could perform her past light work is not supported by substantial evidence; (3)  the ALJ committed

legal error in failing to adequately develop the record in reaching his determination of the Plaintiff's residual functional capacity.

**IV.** *Application of the Governing Law to the Present Facts*

The concept of the "unsuccessful work attempt" concept was designed as an equitable means of disregarding relatively brief work attempts that do not demonstrate substantial gainful employment. *See Andler v. Chater,* 100 F.3d 1389 (8th Cir. 1996). Under 20 C.F.R. § 404.1574(c)(1) an unsuccessful work attempt is measured by the duration and conditions of the claimant's work efforts. In order for a period of employment to be considered an unsuccessful work attempt, there must first be a significant break in the continuity of the claimant's work because of the impairment. *Id.* at § 404.1574(c)(2). The claimant must have stopped working or reduced her earnings below the substantial gainful activity earnings level because of her impairment or because of the removal of special conditions essential to the claimant's performance of the work. *Id.* Where the work period is less than three (3) months, it will be considered an unsuccessful work attempt if the claimant stopped working because of the impairment or the removal of special conditions which permitted her to work. *Id.* at § 404.1574(c)(3). If the work period is between three (3) and six (6) months, it will be considered an unsuccessful work attempt if it ended because of the impairment or removal of the special conditions and either (i) the claimant was frequently absent because of the impairment; (ii) the claimant's work was unsatisfactory because of the impairment; (iii) the claimant worked during a period of temporary remission of her impairment or (iv) the claimant worked under special conditions that were essential to her performance and these conditions were removed. *Id.* at § 404.1574(c)(4). Effective evidence of a disability may be found in unsuccessful work attempts.

*See* Smith, Social Security Appeals in Disability Cases, 28 Admin L. Rev. 13, 21 (1976). *See generally Koss v. Schweiker,* 582 F. Supp. 518 (S.D.N.Y. 1986) (ALJ should carefully weigh evidence to determine whether claimant's subsequent work history confirms or refutes the existence of a disability).

A claimant who is disabled can also test her ability to work by performing services for up to nine months. 20 C.F.R. 404.1592(a). This nine month period is called the "trial work period." Months in which a claimant earns more than $200 counts towards the trial work period. *Id.* Services performed by the claimant during the nine month period are not considered as showing that a claimant's disability has ended until the claimant has performed service for at least nine months, which nine months need not be consecutive. *Id.*

In the present case the ALJ concluded that the claimant has not engaged in substantial gainful activity employment since April 26, 2000. However, the evidence before the ALJ was that Plaintiff was injured at work in February 1997, she is receiving workers compensation benefits and has not worked since the accident except for the brief five month period from November 1999 to April 2000 when she worked as a department store clerk. According to Plaintiff's testimony, she was terminated because she could not perform the work. When she stopped working in April 2000, Plaintiff was treated mostly by Dr. Holtzer and Dr. Alexovitz.

Facially, it would appear that there is evidentiary support for Plaintiff's claim that this was an unsuccessful work attempt or a trail work period. With regard to an unsuccessful work attempt, there was a significant break in employment (approximately two years) after Plaintiff work accident in February 1997 (the alleged onset of her disability), employment of between three and six months and termination of that employment because she could not perform the job.

Despite this testimony, the ALJ did not fulfill his obligation to develop the administrative record. He neither sought confirmation from the department store where plaintiff worked nor requested the records of Dr. Donald Holzer, who Plaintiff testified she saw from 1997 through the time she stopped working in 2000. Indeed the ALJ did not even address Plaintiff's contention that the work period from November 1999 to April 2000 was a failed work attempt or trial work period. On this basis alone, the matter must be remanded for further administrative proceedings. . *See Koss v. Schweiker,* 582 F. Supp. 518, 521(S.D.N.Y. 1986) (ALJ should carefully weigh evidence to determine whether claimant's subsequent work history confirms or refutes the existence of a disability).

Since the matter is being remanded, the Court must also address Plaintiff's contention that the ALJ committed legal error in failing to adequately develop the record in reaching his determination of the Plaintiff's residual functional capacity when, inter alia, he relied upon Dr. Feder's failure to complete the section on whether there were any standing/walking limitations as evidence that there were none. The Court agrees. Where, as here, a treating physician's records are not clear enough on a claimant's limitations, the ALJ's duty to develop the medical evidence includes the duty to seek necessary clarification. *See Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005) ("ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous"); *Rosa,* 168 F.2d at 79 (ALJ"s duty includes seeking additional information from treating physician when there are gaps in the administrative record); *Batista v. Barnhart,* 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004); *Rodirquez v. Apfel,* 1999 WL 511867 (S.D.N.Y.1999); *Brooks v. Apfel,* 1998 WL 544961 (N.D. Ill. 1998). This is especially

13

true, where as here, Defendant's own expert testified that Plaintiff could only stand and walk for "up to two hours." (R. at 35.)[2]

## *CONCLUSION*

For all of the reasons stated above, the Commissioner's motion for judgment on the pleadings is **DENIED**; Plaintiff's motion for judgment on the pleadings is **GRANTED** to the extent that this case is remanded for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
March 14, 2007

/s
Denis R. Hurley
United States District Judge

---

[2]The Commissioner should also reconsider the Plaintiff's testimony and the conclusion that it is not credible as unsupported by the medical evidence in light of the evidence developed on remand. *See Rosa,* 168 F.2d at 82 n.7.